UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD CAMPER<br><br>Plaintiff<br><br>v.<br><br>NANCY A. BERRYHILL[1], Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:16-cv-05910-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Edward Camper ("Plaintiff") filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 13, 14] and briefs addressing disputed issues in the case [Dkt. 18 ("Pltf.'s Br.") and Dkt. 21 ("Def.'s Br.").] The Court has taken the parties' briefing under submission without oral argument. For the reasons set forth below, the Court affirms the decision of the

---

[1] The Court notes that Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this action.

ALJ and orders judgment entered accordingly.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On September 23, 2012, Plaintiff filed an application for DIB. [Dkt. 17, Administrative Record ("AR") 155-157.] The Commissioner denied his initial claim for benefits on January 17, 2013, and upon reconsideration on August 22, 2013. [AR 20, 63-69, 71-78.] On December 23, 2014, a hearing was held before Administrative Law Judge ("ALJ") John C. Tobin. [AR 33-62.] On February 6, 2015, the ALJ issued a decision denying Plaintiff's request for benefits. [AR 17-30.] Plaintiff requested review from the Appeals Council, which denied review on June 16, 2016. [AR 1-7.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. § 404.1520(b)-(g)(1). At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since September 10, 2007, the alleged onset date, through June 30, 2012, the date last insured. [AR 22.] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: chronic back pain and right shoulder pain. [*Id.* (citing 20 C.F.R. § 404.1520(c)).] Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.* (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).]

The ALJ found that Plaintiff had the following residual functional capacity (RFC):
> [L]ight work as defined in 20 CFR 404.1567(b) except with no forceful gripping/grasping with the right hand, occasional reaching overhead with the right hand and occasional working at unprotected heights or in extreme temperature changes.

[AR 24.] Applying this RFC, the ALJ found that Plaintiff was unable to perform past relevant work, but determined that based on his age (44 years old on the date

2

last insured), high school education, and ability to communicate in English, he could perform representative occupations such as cashier II (Dictionary of Occupational Titles ("DOT") 211.462-010), storage/rental facility clerk (DOT 295.367-026), and mail clerk (DOT 209.687-026) and, thus, is not disabled. [AR 26.]

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

## IV. DISCUSSION.

Plaintiff contends that the ALJ erred by failing to properly consider the opinion of Plaintiff's treating physician, Mark Greenspan, M.D., and failed to account for the limitations Dr. Greenspan assessed. [Pltf.'s Br. at 4-13.] Defendant contends that the ALJ properly considered Dr. Greenspan's opinion in his decision, and the "few postural limitations not included in his RFC finding would not change the ALJ's decision because they are not required in the jobs the ALJ found that Plaintiff could perform at step five." [Def.'s Br. at 5.]

### A. Dr. Greenspan's Opinion

"The medical opinion of a [Plaintiff's] treating physician is given controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the Plaintiff's] case record." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (internal quotation omitted). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the

3

treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Id.*

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (internal quotation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation omitted).

On November 21, 2006, Dr. Greenspan examined Plaintiff in connection with a July 2004 work injury. [AR 23; 301-325.] Dr. Greenspan noted that Plaintiff continued to work with modified duties, which included a restriction from heavy lifting. [AR 305.] Dr. Greenspan evaluated Plaintiff again on October 29, 2007, after his alleged onset date, and completed a supplemental medical report. [AR 23-24; 273-298.] Plaintiff reported that he continued to work with self-imposed restrictions of not lifting heavy items or live animals. [AR 275.] Dr. Greenspan noted that medical examiner, Richard M. Siebold, M.D., had recommended right shoulder surgery in May 2006, but Plaintiff decided to forgo the surgery because he had "noted improvement," and had returned to his regular work duties as of October 16, 2006. [AR 278.] Plaintiff reported taking Motrin (800 mg) and Tylenol (500

mg) as needed. [AR 23; 281.] Dr. Greenspan's evaluation includes a review of the examination completed by examining physician Dr. Richard M. Siebold, M.D. [AR 287-292.] Dr. Siebold opined that Plaintiff could not perform "very heavy lifting at or above shoulder level bilaterally," "no repetitive motion category for cervical spine," no "very heavy work," and "no repetitive bending and stooping of [the] lumbar spine." [AR 291-292.]

Dr. Greenspan examined Plaintiff again on February 10, 2010. [AR 24; 247-266.] Dr. Greenspan noted that Plaintiff continued to work as a property manager and was also taking care of his aunt. [AR 24; 248-249.] Plaintiff stated that he had increased pain while cooking, preparing meals, barbequing, grocery shopping, getting objects from the shelf, washing his hair and body, and putting on clothes. [AR 24; 249.] He said he could mop, sweep, vacuum, and perform chores, but avoided these activities if he had pain. [AR 249.] Plaintiff admitted that he had not received any medical care since October 29, 2007. [AR 24; 248.] Rather, he treated his symptoms with home exercises and took pain medication as needed. [*Id.*] Plaintiff reported that he could lift and carry 45-64 pounds with his left arm and 30-35 pounds with his non-dominant right arm. [AR 24; 248; 250.] Dr. Greenspan opined that Plaintiff could not: (1) perform very heavy work at or above shoulder level; (2) perform heavy lifting and repetitive pushing and pulling at or above shoulder level; (3) perform very forceful and forceful activities as well as gripping, grasping, and pinching with the right wrist; (4) push, pull, and twist over 30 pounds; (5) lift over 30 pounds or repetitively bend or stoop; (6) have prolonged standing, repetitive bending, squatting, stooping, kneeling, crouching, and pivoting; and (7) walk on uneven terrain. [AR 264-265.] Dr. Greenspan opined that if Plaintiff's job duties could be modified to comply with these restrictions, such as working in a supervisory capacity, he could resume his career with Delta Airlines. [AR 265.]

Here, the ALJ did not articulate how much weight he assigned to Dr. Greenspan's opinion (if any). However, the Court finds that this error is harmless

5

because the ALJ adopted Dr. Greenspan's assessed limitations in full, as discussed below.

### B. Dr. Greenspan's Limitation Regarding Work At Or Above Shoulder Level

Plaintiff argues that the ALJ "muddled" Dr. Greenspan's opinion by limiting Plaintiff to "occasional reaching *overhead* with the right hand" rather than limiting him to reaching *at or above shoulder level*. [Pltf.'s Br. at 9 (emphasis added).] Plaintiff argues, "[l]ifting at shoulder level differs from lifting above shoulder level which also differs from lifting overhead." [*Id.*] However, as Plaintiff concedes, the hypothetical the ALJ provided to the vocational expert included "occasional overhead right lifting *at or above shoulder level*." [AR 58 (emphasis added); *see* Pltf.'s Br. at 9.] Plaintiff states that it is "unclear what limitation the vocational expert assessed." [Pltf.'s Br. at 9.] However, upon review of the hearing transcript, the Court finds that the ALJ presented a single hypothetical (which included the correct lifting limitation) and from that hypothetical, the vocational expert identified three representative occupations: (1) cashier II, (2) storage/rental facility clerk, and (3) mail clerk, as jobs that someone with Plaintiff's restriction could perform. Thus, it is clear that the ALJ properly accounted for Dr. Greenspan's limitation to refrain from lifting "at or above shoulder level" and the vocation expert properly assessed this limitation in determining what alternative occupations Plaintiff could perform. Accordingly, any discrepancy in the wording of the RFC is harmless error.

### C. Dr. Greenspan's Limitation Regarding "Very Forceful And Forceful Activities As Well As Gripping, Grasping, Or Pinching"

Next, Plaintiff argues that the ALJ "failed to appreciate" Dr. Greenspan's limitation from "very forceful and forceful activities, as well as gripping, grasping, and pinching." [Pltf.'s Br. at 8, 10; AR 264-265.] The ALJ's RFC finding included a limitation to no forceful gripping/grasping with the right hand. [AR 24; 264-265.] Plaintiff argues that the ALJ's limitation is not sufficient because Dr. Greenspan

intended to limit Plaintiff from all forceful and very forceful activities and *any* gripping, grasping, and pinching. [Pltf.'s Br. at 10.] The Court disagrees.

Dr. Greenspan's examination included a Jamar dynamometer test for grip strength. [AR 251.] The exam showed that Plaintiff had a grip strength of 120 pounds, 129 pounds, and 118 pounds in his right hand and a grip strength of 100, 107, and 104 pounds in his dominant left hand. [*Id.*] Thus, the test revealed that Plaintiff's non-dominant right hand is in fact stronger than his left or dominant hand. In addition, Plaintiff's right wrist and hand examination revealed no tenderness, his right wrist had a normal range of motion except for his extension which was two degrees less than normal, he had no crepitation in the wrist, negative Tinel's and Phalen's tests, and a normal range of motion with no pain for each finger on the right hand. [AR 251-255.] Thus, Dr. Greenspan's examination does not support Plaintiff's argument that Dr. Greenspan intended to preclude Plaintiff from any gripping, grasping, or pinching on the right hand due to wrist problems. Rather, the ALJ's interpretation of Dr. Greenspan's opinion in light of the record is rational and supported by the medical evidence. *See Bayliss*, 427 F.3d at 1214 n.1.

Lastly, Plaintiff argues that the ALJ erred in including no "fine handling and fingering limitations" in his hypothetical to the vocational expert because pinching is considered "fingering." [Pltf.'s Br. at 11; *see also* AR 58.] However, the DOT description for the storage/rental facility clerk position does not require any "fingering." *See* DOT § 295.367-026, 1991 WL 672594. Thus, even if Plaintiff could not perform the other two positions identified by the vocational expert, because of fingering limitations, by properly identifying the storage/rental facility clerk position (180,000 jobs nationally), the ALJ has met his burden to demonstrate that Plaintiff could perform some work that exists in "significant numbers" in the national or regional economy, taking into account Plaintiff's RFC (including any potential pinching or fingering limitation), age, education, and work experience. *See* 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.966(a); *Gutierrez v. Comm'r of*

*Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014); *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). As such, the identification of additional jobs that Plaintiff could perform, even if erroneous, is harmless error. *See Mitchell v. Colvin*, 584 Fed. App'x 309, 312 (9th Cir. 2014) (finding that erroneous identification of job constituted harmless error where ALJ identified another that existed in significant numbers); *Yelovich v. Colvin*, 532 Fed. App'x 700, 702 (9th Cir. 2013) (same). Accordingly, Plaintiff is not entitled to reversal or remand on this issue.

### V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: January 23, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE